**FILED**

**June 11, 2024**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0135, *Rockspring Development, Inc. v. Randy Brown*

Armstead, Chief Justice, concurring:

This case presents a unique issue: how to assess and resolve a conflict between a claimant's pre-transplant and post-transplant medical records for purposes of determining the impairment rating in a workers' compensation matter. As explained below, I concur with the majority opinion's resolution of this case and write separately to note that it is within the Legislature's purview to examine and address this issue. Guidance from the Legislature would assist employers, claimants, and the Occupational Pneumoconiosis Board ("OP Board") in assessing future cases presenting similar factual scenarios.

By way of quick background, the claims administrator determined that Respondent Randy Brown ("Respondent") contracted occupational pneumoconiosis ("OP") and had presented sufficient evidence justifying a total impairment rating of 50%. While his claim was pending, Respondent had a bilateral lung transplant. Following the transplant, his pulmonary function testing and x-ray reports showed no evidence of OP. Petitioner Rockspring Development, Inc. ("Petitioner") protested the claims administrator's ruling and the OP Board reviewed the claim.

The OP Board unanimously found that Respondent's post-transplant x-ray revealed that Respondent's lungs looked normal with no evidence of OP. However, the OP Board concluded that Respondent's OP impairment rating should be based on his pre-transplant medical records. One member of the OP Board, Dr. Jack Kinder, explained,

1

"I'm basing [my recommendation] on the fact that he had 50% in his native lungs before

his transplant, and I believe that is an appropriate recommendation to stay at."  Dr. Kinder

noted that this was "an extremely complicated case" and that the OP Board had never dealt

with similar circumstances.  He described the unique factual circumstances as follows:

> We [the OP Board] have never had a case where we have re-evaluated someone post-transplant in this manner to see if their pulmonary function improved.  That has not been brought up, that I can recall.  I have called other agencies.  Specifically[,] I have also called the insurance commission trying to get more information on other cases before I became a member of this Board or the Chairman of the Board.  No one had any evidence or any remembrance of any case like this before.

Both the Office of Judges ("OOJ") and Board of Review ("BOR") determined that the OP

Board's findings and conclusions were not clearly wrong and adopted the recommendation

to grant Respondent a total permanent partial disability award of 50%.

I agree with the majority opinion's ruling which affirms the BOR on a narrow

basis.  The majority opinion properly acknowledges that

> [t]here was undisputed evidence in the record below to demonstrate that Mr. Brown contracted OP and suffered a resulting measurable impairment for many years. *In the absence of statutory guidance* on whether and how a transplant surgery that occurs during the pendency of the claim impacts an impairment rating, we simply cannot conclude that the Board of Review erred, particularly in light of the deference they are afforded.

*Id.* at 15 (emphasis added).

This Court has recognized that "[t]he right to workmen's compensation

benefits is wholly statutory." Syl. Pt. 2, in part, *Dunlap v. State Comp. Dir.*, 149 W. Va.

2

266, 140 S.E.2d 448 (1965). Because there is no statutory guidance addressing the precise factual situation in this case, I agree with the majority opinion's conclusion that the BOR's ruling should be affirmed. *See Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 297, 879 S.E.2d 779, 784 (2022*)* (noting that "[o]n appeal, we give deference to the Board of Review's findings, reasoning, and conclusions"). It is within the Legislature's purview to provide guidance and specifically address the factual circumstances presented in this case, i.e., whether the decisionmaker should consider the pulmonary function of the pre-transplant lungs or the function of the post-transplant lungs when the transplant occurred during the pendency of the claim proceedings. In light of continuing and emerging medical advancements that make similar questions increasingly likely, such guidance would be incredibly valuable.

I commend the majority for noting cases from other jurisdictions that have addressed similar issues and agree with the majority's conclusion that these cases do not resolve the current matter because they involve different statutory language and other distinguishing considerations. *See Vitti v. City of Milford*, 249 A.3d 726 (Conn. 2020); *Creative Dimensions Grp., Inc. v. Hill*, 430 S.E.2d 718 (Va. App. 1993); *Kalhorn v. City of Bellevue*, 420 N.W.2d 713 (Neb. 1988); *State ex rel. Kroger Co. v. Stover*, 510 N.E.2d 356 (Ohio 1987); *Lee Connell Constr. Co. v. Swann*, 327 S.E.2d 222 (Ga. 1985). Should the Legislature choose to address this issue, these cases could offer guidance and insight.

Based on all of the foregoing, I respectfully concur.